# EXHIBIT A

# COURT-AUTHORIZED NOTICE

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF NEW YORK

## If you worked for HealthPlus as a Medicaid Marketing Representative between October 12, 2007 and the present, please read this notice.

## A collective action lawsuit may affect your legal rights.

*This is a court-authorized notice.  This is not a solicitation from a lawyer.*

- A former HealthPlus Medicaid Marketing Representative (called "the Plaintiff") filed a lawsuit (Li v. HealthPlus Prepaid Health Services Plan, Inc., No. 10 Civ 1843) claiming that HealthPlus did not pay him and other similarly situated Medicaid Marketing Representatives for all of the hours they performed work for HealthPlus (the "Lawsuit").

- The purpose of this Notice is to inform you of the existence of the Lawsuit, to advise you of your right to join the Lawsuit, and to explain how your rights may be affected by the Lawsuit.  The Court has authorized the parties to send out this Notice.  The Court has not decided who is right and who is wrong.

- Although HealthPlus denies that it failed to pay Medicaid Marketing Representatives for all hours worked or that it is liable or owes underpayments to anyone, it has concluded that it is in its best interests at this time to attempt to negotiate a settlement of this lawsuit.  If the case is not settled by the parties, the Court will address the claims in the Lawsuit.

- Your options are explained in this notice.  To ask to be included in the lawsuit, you must act before _____ [insert 60 days from date notice is sent out] _____.

### This notice contains information that affects your rights.  Please read it carefully.

### 1. Why did I get this notice?

You are getting this notice because HealthPlus' records show that you work or worked for HealthPlus as a Medicaid Marketing Representative in the last three years.

### 2. What is this lawsuit about?

The Lawsuit alleges that Medicaid Marketing Representatives were not paid for all hours that they worked for HealthPlus in violation of federal and New York law, including hours spent at customers' homes after their scheduled shift and/or hours spent at their own homes in the evening performing duties for HealthPlus' benefit.

**Questions?**
**Contact Michael Scimone at Outten & Golden LLP at (212) 245-1000**
**or Toll-Free at 1-877-468-8836**

HealthPlus denies that it failed to pay Marketing Representatives for all hours they worked.  It is HealthPlus' position that it paid Plaintiff and all other Medicaid Marketing Representatives all wages to which they were entitled under federal and New York law.

The lawsuit is known as *Li v. Health Plus Prepaid Health Services Plan, Inc.*, No. 10 Civ. 1843 (DLI) (SMG) and it is pending in the United States District Court for the Eastern District of New York.

### 3. What is a collective action and who is involved?

The Plaintiff has brought this Lawsuit on behalf of himself and other Marketing Representatives who he claims are "similarly situated" to himself.  All employees who worked as Medicaid Marketing Representatives for HealthPlus who join the case are part of the "Collective" and are called "Collective Action Members."  The individual who brought this lawsuit – and all of the Collective Action Members – are the Plaintiffs.  HealthPlus is the Defendant.  One Court resolves the issues for everyone who decides to join the case.

### 4. Why is this lawsuit a Collective Action?

The parties have agreed that this case should proceed as a collective action under § 216(b) of the Fair Labor Standards Act ("FLSA"), and the Court has approved their agreement, which means that the judge in this case has approved this notice to current and former HealthPlus Medicaid Marketing Representatives so that they can decide whether to join the case as members of the "Collective."

### 5. What is the Defendant's position?

HealthPlus denies that it violated federal or state law.   HealthPlus denies that it failed to pay any Medicaid Marketing Representative wages to which that person was entitled.

### 6. Has the Court decided who is right?

The Court has not decided whether or not HealthPlus violated the law.  By allowing workers to join the case as members of the Collective and issuing this Notice, the Court is not suggesting that the Plaintiff will win or lose the case.

2

**Questions?**
**Contact Michael Scimone at Outten & Golden LLP at (212) 245-1000**
**or Toll-Free at 1-877-468-8836**

## 7. What is the Plaintiff asking for?

The Lawsuit is seeking to recover for the members of the Collective alleged unpaid overtime wages and other statutory damages. The Lawsuit is also seeking recovery of costs and attorneys' fees.

## 8. Can I join the collective?

To be eligible to join this Lawsuit, you must have been employed by HealthPlus as a Medicaid Marketing Representative at any time between October 12, 2007 and the present and have worked hours for which you were not paid, including hours at customers' homes and/or hours at your own home in the evening performing duties for HealthPlus' benefit.

## 9. What happens if I do nothing at all?

If you choose to not join this lawsuit, you will not be affected by any decision in this case, whether favorable or unfavorable. You will not be entitled to share any amounts recovered by Plaintiff as part of the Lawsuit. You also will be free to hire your own lawyer and file your own lawsuit. You should be aware that your time to bring federal wage and hour claims is limited by a two or three-year statute of limitations. Delay in joining this action, or proceeding separately, may result in part or all of your claims expiring.

## 10. What happens if I join the lawsuit?

If you choose to join this lawsuit, you will be bound by any ruling, settlement or judgment, whether favorable or unfavorable. You will also share in any settlement or judgment obtained by the Plaintiff. By joining this lawsuit, you agree to have the Plaintiff act as your representative and make decisions on your behalf concerning the case, including approving any settlement, entering into an agreement with counsel regarding payment of attorneys' fees and costs, and deciding all other matters pertaining to this lawsuit. Decisions made and agreements entered into by the Plaintiff will be binding on you if you join the lawsuit. While this suit is pending, you may be asked to provide documents or information relating to your employment at HealthPlus, which may include responding to written questions and requests for documents. You also may be asked to sit for a deposition to be scheduled at your convenience in New York City.

It is not necessary that you have any documents or other evidence of hours worked or duties performed in order to participate in this case. If you do have any such records, however, please preserve all of them, including any documents or electronic data relating to your employment with HealthPlus.

3

**Questions?**
**Contact Michael Scimone at Outten & Golden LLP at (212) 245-1000**
**or Toll-Free at 1-877-468-8836**

## 11. Can HealthPlus and/or my current employer retaliate against me if I join the lawsuit?

No. It is a violation of federal law for Defendant or your current employer to fire, discipline, or in any manner discriminate or retaliate against you for taking part in this case.

## 12. How do I ask the Court to include me in the case?

Enclosed is a form called "Consent to Join." **If you choose to join this lawsuit, it is extremely important that you read, sign, and promptly return the Consent to Join form**. An addressed and postage-paid envelope is enclosed for your convenience. Should the enclosed envelope be lost or misplaced, the Consent to Join Form must be sent to:

**HealthPlus Lawsuit**
**Attn: Michael Scimone**
**Outten & Golden LLP**
**3 Park Avenue, 29th Floor**
**New York, NY 10016**

You can also fax the Consent to Join form to (212) 977-4005 or scan and email it to HealthPluslawsuit@outtengolden.com.

If you need help filling out this form, ask for Michael Scimone at (212) 245-1000.

The signed Consent to Join form must be postmarked, emailed, or faxed by [60 days from mailing of this Notice]. **If your signed Consent to Join Form is not postmarked**, emailed, or faxed by **[60 days from mailing of the Notice], you may not be allowed to participate in the federal law portion of this lawsuit, or share in a monetary recovery on the federal law claims.**

## 13. Do I have a lawyer in this case?

If you choose to join this lawsuit, you will be represented by:

Justin M. Swartz, Rachel Bien, Michael Scimone, Sonia Lin, and other lawyers at Outten & Golden LLP, 3 Park Avenue, 29th Floor, New York, NY 10016, www.outtengolden.com.

## 14. Should I get my own lawyer?

You do not need to hire your own lawyer because Plaintiff's attorneys will be working on your behalf. You are allowed to hire your own lawyer at your own expense.

**Questions?**
**Contact Michael Scimone at Outten & Golden LLP at (212) 245-1000**
**or Toll-Free at 1-877-468-8836**

## 15. How will the lawyers be paid?

You will not be required to pay any attorneys' fees or costs out of your own pocket. The Plaintiff has entered into a contingency fee agreement with his attorneys. Under this agreement, if there is a settlement with HealthPlus or if there is a trial and the Plaintiff prevails, Plaintiff's attorneys are entitled to the greater of: (a) one-third of the total recovery as legal fees or (b) the actual value of the time the attorneys spend on the case. The Court may be asked to approve the attorneys' fees. You can obtain a copy of the contingency fee agreement executed by the Plaintiff upon request from Plaintiff's counsel identified above.

## 16. Questions?

If you have any questions about this Lawsuit, please write, e-mail or call Outten & Golden attorney Michael Scimone, Esq. at:

Outten & Golden LLP
3 Park Avenue , 29th Floor
New York, NY 10016
(212) 245-1000 or toll-free at (877) 468-8836
mscimone@outtengolden.com

4834-6197-1464, v. 1

5

**Questions?**
**Contact Michael Scimone at Outten & Golden LLP at (212) 245-1000**
**or Toll-Free at 1-877-468-8836**

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RONALD STILLMAN,                        :
                                        :
            Plaintiff,                  :        Civil Action No. 07-849 (PS)
      v.                                :
                                        :
STAPLES, INC.,                          :        ORDER ON INFORMAL
                                        :            APPLICATION
                                        :
            Defendant.                  :

This matter having come before the Court by way of letter dated July 2, 2008, regarding the plaintiffs' request to send a "reminder" notice to the potential members of the collective action;

and the Court having considered the submission;

and while the plaintiffs have not provided any reason to believe that the proposed notice was not received by the intended recipients, the defendant has not shown any prejudice from the plaintiffs' request as it will not change any deadlines or cause the defendant any additional costs associated with the distribution of the notice;

and for the reasons set forth in the Opinion delivered on the record on July 3, 2008;

and for good cause shown,

IT IS ON THIS 3rd day of July, 2008

ORDERED that the plaintiffs' request to re-send the identical court-approved notice is granted: No later than **July 8, 2008**, the plaintiffs may send the identical notice that was previously approved to the potential plaintiffs who have not responded and plaintiffs shall pay all costs associated with sending out the notice; and

IT IS FURTHER ORDERED that nothing herein modifies any of the deadlines set forth in the notice or the schedule for proceedings.

_____
s/Patty Shwartz
UNITED STATES MAGISTRATE JUDGE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
**RAVENELL, et al.,**

                         Plaintiffs,                         **ORDER**

    -against-                                 08-CV-2113 (SLT) (ALC)

**AVIS BUDGET GROUP, INC., et al.,**

                         Defendants.
-----------------------------------------------------------------X

**ANDREW L. CARTER, JR., UNITED STATES MAGISTRATE JUDGE:**

The parties have submitted two separate proposed notices and consent forms for the Court's consideration.  My order is as follows:

1. The consent to join forms will be mailed to a third party administrator as described by Plaintiffs.

2. First page of the Notice, second paragraph under "Description of Lawsuit" – Plaintiffs' proposed language will be included in the notice.

3. Paragraph 3 "How can you Participate in the Lawsuit" – Plaintiffs' proposed language shall remain in the notice.  The notice does not need to inform other plaintiffs that joining the lawsuit could result a change in their employment status.

4. Paragraph 5 "Effect of Joining the Lawsuit" – Plaintiffs' proposed language will be included in the notice.  The notice does not need to inform the other plaintiffs about the potential discovery involved in the suit.

5. Paragraph 9 "No Opinion Expressed As to the Merits of the Lawsuit" – Defendants' proposed language will be included in the notice.

6. Consent to Join form – Plaintiffs' proposed form will be included in the notice, with one exception.  The last sentence: "I also hereby designate Plaintiff's counsel…"

shall be changed to reflect the fifth provision of Defendants' proposed consent to join

form, where it gives other plaintiffs the option to retain another attorney or represent

themselves.  Plaintiffs can revise the first paragraph of Defendants' fifth provision to

include counsel's information.

7.  Plaintiffs may mail a second notice of lawsuit thirty days before the expiration of the

opt-in period.


**SO ORDERED**

**Dated: September 29, 2010**
**Brooklyn, New York**                                     /s/ ALC
                                                _____
                                                **HONORABLE ANDREW L. CARTER, JR.**
                                                **UNITED STATES MAGISTRATE JUDGE**

# EXHIBIT C

LEXSEE



Positive
As of: Dec 10, 2010

**JOEL WITTEMAN, RANDY UDELL, CAROL COUILLARD, MICHAEL
LOOMIS and TERRENCE O'NEIL, individually and on behalf of others similarly
situated, Plaintiffs, v. WISCONSIN BELL, INC., Defendant.**

**09-cv-440-vis** [1]

1   The parties have declined the jurisdiction of the magistrate judge in this case.
Because no Article III judge has been assigned, I am assuming jurisdiction over
the case for the purpose of resolving the parties' current disputes.

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
WISCONSIN**

**2010 U.S. Dist. LEXIS 8845**

**February 2, 2010, Decided
February 2, 2010, Filed**

**CORE TERMS:** class members, notice, engineer, plant, similarly situated, conditional, lawsuit, notice period, certification, join, collective action, sentence, class certification, overtime compensation, discovery, subclasses, manager, exempt, reminder, Labor Standards Act, Team Law Specialists, plant managers, former employees, job duty, fails to explain, conditionally, dissimilarities, reclassified, classified, decertify

**COUNSEL:** [*1] For Joel Wittemann, Randy Udell, Carol Couillard, Michael Loomis, Terrence O'Neil, Plaintiffs: Adrianna Salsbery Haugen, Matthew H. Morgan, Paul J. Lukas, Timothy C Selander, LEAD ATTORNEYS, Nichols Kaster, PLLP, Minneapolis, MN.

For Wisconsin Bell, Inc., Defendant: Kenneth W. Gage, Paul Hastings Janofsky Walker, Chicago, IL.

**JUDGES:** BARBARA B. CRABB, District Judge.

**OPINION BY:** BARBARA B. CRABB

**OPINION**

OPINION AND ORDER

The question before the court is whether this case is appropriate for conditional class certification under § 216(b) of the Federal Labor Standards Act. The plaintiffs are "outside plant engineers" who contend that defendant Wisconsin Bell, Inc. was violating the FLSA by denying them overtime compensation until May 2009, when defendant reclassified their positions as "nonexempt" from overtime requirements. Because I conclude that plaintiffs have made the necessary preliminary showing that the potential class members are similarly situated, plaintiffs' motion for conditional class certification will be granted.

Also before the court are plaintiffs' two proposed notices to potential class members and a motion to compel defendant to produce the names, addresses, employee identification numbers and dates [*2] of employment of all outside plant engineers from the last three years, excluding those that began working after May 16, 2009. Although defendant does not oppose the motion to compel, it raises a number of objections to the

Page 1

notices. I address these objections below.

OPINION

A. *Conditional Certification*

Under § 216(b) of the Fair Labor Standards Act, employees may bring a collective action on behalf of themselves and other "similarly situated" employees for an employer's failure to pay compensation, including overtime, to employee who are covered by the statute. In determining whether a class should be certified conditionally under 29 U.S.C. § 216(b), the question is whether the "plaintiff has made a modest factual showing that she and potential class members were victims of a common policy or plan that violated the law." *Sharpe v. APAC Customer Services, Inc.*, 09-cv-329-bbc, 2010 U.S. Dist. LEXIS 1671, 2010 WL 13516, *4 (W.D. Wis. Jan. 11, 2010) (citing *Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 628-29 (W.D. Wis. 2009); *Clarke v. Convergys Customer Management Group, Inc.*, 370 F. Supp. 2d 601, 604 (S.D. Tex. 2005); *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003); *Kane v. Gage Merchandising Services, Inc.*, 138 F. Supp. 2d 212, 214 (D. Mass. 2001)).

The [*3] requirements of conditional certification are lenient because approval simply allows plaintiffs to provide notice to other potential class members so that they may make an informed decision whether to join the case. At the close of discovery, the defendant may move to decertify the class if it believes that the evidence shows that the class members are not similarly situated. *Sjoblom v. Charter Communications, LLC*, No. 07-cv-451-bbc, 2007 U.S. Dist. LEXIS 93879, 2007 WL 4560541, *8 (W.D. Wis. Dec. 19, 2007).

Plaintiffs propose a class consisting of anyone who worked for defendant as an outside plant engineer and was paid a salary, but was not paid for time worked in excess of 40 hours a week. The relevant period is any time before May 16, 2009 (when defendant reclassified outside plant managers) that is within the three-year statute of limitations period.

Plaintiffs argue that a common policy may be inferred at this stage of the proceedings because defendant itself has grouped all outside plant managers together in determining whether they qualify as employees covered by the FLSA. *Nerland v. Caribou Coffee Co., Inc.*, 564 F. Supp. 2d 1010, 1022-24 (D.

Minn. 2007) (in concluding that class members were similarly situated, [*4] relying on fact that employer "collectively and generally decide[d] that all [potential class members] are exempt from overtime compensation"). Defendant initially made a single decision classifying all "outside plant engineers" as exempt from the FLSA and then, in 2009, reversed course and classified all outside plant engineers as non-exempt. In addition, plaintiffs have filed affidavits of 32 current and former employees classified by defendant as outside plant engineers in which the employees aver that their job responsibilities were substantially the same. Dkt. ## 34-55 In particular, each employee avers that his or her primary job duty is (or was) to draw up plans for the proper placement of telephone and data cables.

Defendant does not deny these facts. In fact, it does not even deny that plaintiff can meet the standard for conditional certification set forth in *Sharpe* and this court's other decisions under § 216(b). Instead, defendant argues that plaintiffs' characterization of their job duties is an "oversimplification" because the title "outside plant engineer" actually encompasses six different positions: planner, design engineer, right of way engineer, loop electronic engineer, [*5] project manager and officer manager.

Although defendant devotes most of its brief to an argument that there are numerous differences among the potential class members, it says surprisingly little about the reasons those alleged differences are relevant for the purpose of determining whether plaintiffs are exempt from the FLSA, which is the only difference that matters. *Spoerle v. Kraft Foods Global, Inc.*, 253 F.R.D. 434, 439-40 (W.D. Wis. 2008) ("If simply identifying differences between the parties were enough to defeat a motion for class certification, it would be impossible for any lawsuit to proceed as a class. . . . [Defendant must explain why] these differences are relevant for the purpose of maintaining a class or a collective action.") Further, defendant fails to explain why any problematic dissimilarities among the different "types" of outside plant engineers could not be solved through subclasses. *Carnegie v. Household International, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) (stating that "creating subclasses" is one method for managing differences among class members).

In any event, I addressed an almost identical argument in *Austin v. CUNA Mutual Insurance Society*,

2010 U.S. Dist. LEXIS 8845, *5

232 F.R.D. 601, 606 (W.D. Wis. 2006), [*6] and concluded that it was premature:

> Defendant argues that plaintiff should not be allowed to send a notice because this case is not appropriate for class treatment. It contends that "the primary question" in this case will be whether plaintiff falls within the "white collar exemption" to the FLSA's overtime compensation requirement. Dft.'s Br., dkt. # 9, at 5. It cites several cases in which courts declined to certify collective actions because liability depended on fact-specific examinations of each individual's employment and the applicability of statutory exemptions. *E.g., Mike, 274 F. Supp. 2d at 220-21; Clausman v. Nortel Networks, Inc.,* IP 02-0400-C-M/S, 2003 U.S. Dist. LEXIS 11501, 2003 WL 21314065 (S.D. Ind. May 1, 2003); *Pfaahler v. Consultants for Architects, Inc.,* No. 99 C 6700, 2000 U.S. Dist. LEXIS 1772, 2000 WL 198888 (N.D. Ill. Feb.8, 2000). In addition, defendant argues that plaintiff is not similarly situated to other Law Specialists employed by defendant. It has filed several affidavits in support of this argument and devotes more than ten pages in its brief to explaining duties of Non-Litigation Team Law Specialists, Process Team Law Specialists and Law Specialists who function as case managers.
>
> As the detail inherent in [*7] these arguments should indicate, defendant should have reserved them for a later stage in the proceedings under the FLSA. As the court noted in *Gambo,* 2005 U.S. Dist. LEXIS 37998, 2005 WL 3542485 at *4, "[t]he possibility of a fact-intensive inquiry into whether all members of the putative opt-in class are in fact similarly-situated does not preclude authorizing notice, although the need for such an analysis might weigh against or defeat certification of an actual class (or influence the form of any eventual certified class) at the second stage."

> Defendant's arguments about the predominance of individualized inquiries and the dissimilarities between plaintiff and other employees are properly raised after the parties have conducted discovery and can present a more detailed factual record for the court to review. *Clarke,* 370 F. Supp. 2d at 606-07; *see also Herrera v. Unified Management Corp.,* No. 99 C 5004, 2000 U.S. Dist. LEXIS 12406, 2000 WL 1220973, at *2 (N.D. Ill. Aug.18, 2000) (more efficient to prune class members at later stage than to restrict class at start and expand at later stage). The proper focus at this stage is on plaintiff's submissions, which consist of the complaint and her affidavit.

The situation is no different in this [*8] case. Plaintiffs have made a modest factual showing that the proposed class members are similarly situated. If, after discovery, defendant shows that any differences among the class members make it too difficult to decide their claims together, defendant may ask to decertify the class or divide the class into subclasses.

B. *Notice*

Accompanying plaintiffs' motion for conditional certification is a proposed class notice as well as a proposed "reminder" to be sent out just before the deadline. Defendant raises five objections to the proposed notice.

First, the last page of the notice includes the following sentence in capital letters: "The Court has made no decision in this case about the merits of plaintiffs' claims or defendant's defenses." Defendant has no qualms about the wording, but it believes this statement should be moved to the first page to avoid the appearance of "judicial sponsorship." I disagree with defendant that the placement of this sentence is important. So long as the information is prominently displayed somewhere in the notice, there should be no perception of endorsement.

Second, defendant says that the notice fails to explain that potential class members have the right [*9] to obtain their own lawyer and file a separate lawsuit. I agree. Although plaintiffs point to the statement, "[i]f you

Page 3

2010 U.S. Dist. LEXIS 8845, *9

do not wish to join this action, you are free to take any action on your own," the phrase "take any action" is ambiguous. Accordingly, plaintiffs should replace that sentence with: "If you do not wish to join this action, you are free to retain your own counsel independently and file your own individual lawsuit."

Third, defendant objects that the notice does not inform potential class members of a possible obligation to sit for a deposition and testify in court. Plaintiffs agree to add the following sentence under the heading "Effect of Joining or Not Joining this Lawsuit": "If you join the lawsuit, you may be required to respond to written questions, sit for a deposition and testify in court."

Fourth, defendant says that the notice period should be reduced from 90 days to 30 days, but it identifies no reason for doing so. Although either amount of time might be workable, 30 days leaves little room for any delays that might occur as a result of difficulty in locating former employees. *E.g., N.N. v. Madison Metropolitan School District,* No. 08-cv-581-bbc, 2009 U.S. Dist. LEXIS 88706, 2009 WL 3126383 (W.D. Wis. Sept. 24, 2009) [*10] (granting extension of 30-day class notice period after class counsel experienced difficulty locating some class members). On the other hand, if I approve a 90-day notice period, the end of the notice period will run past the deadline for filing a motion for decertification, which is April 16, 2010. Accordingly, I will approve a 60-day notice period.

Finally, defendant objects to plaintiffs' proposed "reminder" notice. I agree that the reminder is unnecessary and potentially could be interpreted as encouragement by the court to join the lawsuit. The purpose of notice is simply to inform potential class members of their rights. Once they receive that information, it is their responsibility to act as they see fit.

ORDER

IT IS ORDERED that

1. The motion filed by plaintiffs Joel Wittemann, Randy Udell, Carol Couillard, Michael Loomis and Terrence O'Neil to conditionally certify this case as a collective action under 29 U.S.C. § 216(b), dkt. # 29, is GRANTED.

2. Plaintiffs are authorized to send notice to the individuals that fall within the class after making the changes identified in this order. Plaintiffs should file and serve the corrected draft no later than February 12, 2010.

3. No later [*11] than February 12, 2010, defendant must provide plaintiff with a computer-readable spreadsheet containing the names, addresses, employee identification numbers and dates of employment for all current and former outside plant engineers who worked for plaintiff within the last three years, but started working May 16, 2009.

Entered this 2nd day of February, 2010.

BY THE COURT:

/s/

BARBARA B. CRABB

District Judge

LEXSEE



Positive
As of: Dec 10, 2010

**TIFFANY SHARPE, individually and on behalf of all other similarly situated individuals, Plaintiffs, v. APAC CUSTOMER SERVICES, INC., Defendant.**

**09-cv-329-bbc**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WISCONSIN**

**2010 U.S. Dist. LEXIS 95377**

**March 29, 2010, Decided**

**PRIOR HISTORY:** Sharpe v. APAC Customer Servs., 2010 U.S. Dist. LEXIS 1671 (W.D. Wis., Jan. 8, 2010)

**CORE TERMS:** notice, class members, consent form, opt-in, lawsuit, customer service, join, collective action, discovery, footer, decertification, certification, settlement, following statement, proposed changes, class mail, attached notice, means of communication, contacting, red-lined, sending, mailing, mail

**COUNSEL:** [*1] For Tiffany Sharpe, Individually, and on behalf of all others similarly situated, Plaintiff: Ashlea G. Schwarz, George A. Hanson, LEAD ATTORNEYS, PRO HAC VICE, Stueve Siegel Hanson LLP, Kansas City, MO; Bradford B. Lear, LEAD ATTORNEY, PRO HAC VICE, Todd C. Werts, LEAD ATTORNEY, LEAR WERTS, Columbia, MO; Daniel Bach, LEAD ATTORNEY, Bauer & Bach LLC, Madison, WI; Peggy Lautenschlager, LEAD ATTORNEY, Lawton & Cates, S.C., Madison, WI.

For APAC Customer Services, Inc., Defendant: Andrew J. Voss, LEAD ATTORNEY, Jacqueline Kalk, Jeffrey A. Timmerman, Littler Mendelson, P.C., Minneapolis, MN.

**JUDGES:** BARBARA B. CRABB, District Judge.

**OPINION BY:** BARBARA B. CRABB

**OPINION**

OPINION AND ORDER

On January 11, 2009, I granted plaintiff Tiffany Sharpe's motion for conditional certification of the following opt-in nationwide collective action under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216:

> All persons who at any time within the past three years have worked for APAC Customer Services, Inc. as a customer service representative at its facilities in Tucson, Arizona; Tampa, Florida; Cedar Rapids, Iowa; Davenport, Iowa; Utica, New York; Corpus Christi, Texas; Green Bay, Wisconsin; or La Crosse, Wisconsin and were not paid for [*2] all hours worked in excess of 40 hours per week.

Dkt. #66. I also allowed defendant APAC Customer Services, Inc. an opportunity to file any objections it may have to the content and method of plaintiff's proposed notice and consent form to potential class members. On January 29, 2010, 10 days after defendant filed its objections, the parties filed a joint motion to stay proceedings in this case to allow them an opportunity to engage in settlement negotiations. I granted that motion

Page 1

2010 U.S. Dist. LEXIS 95377, *2

on February 1, 2010, ordering a 45-day stay. Dkt. # 71. In a status conference before Magistrate Judge Crocker on March 24, 2010, the parties advised the court that they had not reached settlement. Therefore, I will lift the stay and consider the parties' submissions regarding the proposed notice and consent form. Dkt. ##67 and 69.

As explained below, defendant has raised some valid objections and proposed changes. I have taken them into account in revising the notice and consent form. I will authorize a one-time distribution of the attached notice and consent form by first class mail. Potential opt-in plaintiffs will have 60 days within which to file their notices of consent to join this lawsuit. In the event [*3] that notification by mail fails to reach certain potential opt-in plaintiffs, plaintiff can seek approval from the court for additional means of communication.

OPINION

A. Content of Notice and Consent Form

Defendant raises four general objections to plaintiff's proposed notice and consent form and has attached "red-lined" versions of the documents showing its proposed changes. Plaintiff generally objects to defendant's rewriting of the proposed notice and points out that the notice plaintiff submitted tracks the format of the Federal Judicial Center's model notice for FLSA collective actions.

First, defendant asserts that the notice describes the lawsuit inaccurately as being filed by numerous customer service representatives and fails to describe the specific nature of plaintiff's claims. Although plaintiff correctly notes that many of the specific changes proposed by defendant are unnecessary, I agree with the substance of defendant's concerns and have revised the first few paragraphs of the proposed notice to address them.

Second, defendant contends that the notice should contain a statement that "APAC [*4] denies plaintiff's allegations and has asserted various defenses to plaintiff's claims." Because plaintiff does not oppose this statement and there is no reason to exclude it, I have added it to the notice.

Third, defendant asserts that the following statement suggests that the court has endorsed the lawsuit: "A federal court authorized this notice. This is not a solicitation from a lawyer." Similarly, defendant argues

that the title of paragraph 12--"How do I ask the court to include me in this case?"--implies that the court is encouraging potential class members to join the lawsuit. I disagree with defendant's objections to the first statement, but I agree that the title of paragraph 12 should be changed so as to not confuse potential class members of the court's role in this case.

Fourth, defendant notes that the proposed notice repeatedly advises potential class members of the ramifications of not joining the lawsuit and in the footer on each page, encourages them to contact plaintiff's counsel. Defendant argues that the language is coercive and does not respect an individual's personal choice to join the lawsuit. To address these concerns, defendant proposes deleting the footer and [*5] the table on the first page. Because plaintiff's counsel is clearly listed in the notice, I will delete the footer. However, because I find the table to be a good summary of the rights of potential class members, it will remain in the notice. Finally, after considering the red-lined versions of the notice submitted by both parties, I have made some revisions to the notice in an effort to make it clearer and more concise.

Defendant's only objection to the proposed consent form is the following statement: "If this case does not proceed collectively, I also consent to join any subsequent action against APAC Customer Services, Inc. for unpaid wages and overtime." Because plaintiff agrees, I have deleted it. The final approved versions of the notice and consent form are attached to this order.

B. Other Issues

In January 2010, defendant asked that the opt-in period for potential class members be limited to 60 days, arguing that the proposed 90 days was unnecessary and would force defendant to move for decertification of the collective action before the close of the opt-in period. It also requested that it be allowed to conduct discovery for at least an additional 60 days after the close of [*6] the opt-in period. I agree that a 60-day opt-in period for potential class members is sufficient. On March 26, 2010, the magistrate judge entered a preliminary pretrial conference order, which addresses defendant's discovery concern. Dkt. #77. Motions for class certification under Fed. R. Civ. P. 23 and for decertification of the FLSA class are due September 17, 2010, allowing defendant ample time for discovery after the close of the opt-in period for potential class members. Id. at 1.

2010 U.S. Dist. LEXIS 95377, *6

Finally, defendant asks that plaintiff's written communications with potential class members be limited to sending the approved notice via United States mail on only one occasion. Defendant objects to plaintiff sending any cover letters, follow-up letters or reminder notices. It also seeks to prevent plaintiff from using a potential class member's telephone number unless and until that person has submitted a consent form. At this stage, I will grant defendant's request and limit plaintiff's contact with potential class members to the one-time mailing of the approved notice. If plaintiff has difficulty contacting potential class members, she may seek approval from the court for alternative means of communication. [*7] Plaintiff is not restricted from contacting individuals who opt in to the lawsuit.

ORDER

IT IS ORDERED that

1. Plaintiff Tiffany Sharpe is authorized to distribute the attached notice and consent form by first class mail to those individuals who fall within the class. Plaintiff may not otherwise contact potential class members without further approval from the court.

2. Potential opt-in plaintiffs will have 60 days from the mailing date of the notice within which to file notices of consent.

Entered this 29th day of March, 2010.

BY THE COURT:

/s/

BARBARA B. CRABB

District Judge

LEXSEE



Positive
As of: Dec 10, 2010

**EUSEBIUS JACKSON, on behalf of himself and all others similarly situated,
Plaintiff, vs. PAPA JOHN'S USA, INC., et al., Defendants.**

**CASE NO. 1:08-CV-2791**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
OHIO**

**2009 U.S. Dist. LEXIS 31887**

**April 15, 2009, Decided
April 15, 2009, Filed**

**SUBSEQUENT HISTORY:** Motion granted by Jackson v. Papa John's United States, Inc., 2009 U.S. Dist. LEXIS 41227 (N.D. Ohio, May 11, 2009)

**PRIOR HISTORY:** Jackson v. Papa John's USA, Inc., 2009 U.S. Dist. LEXIS 23396 (N.D. Ohio, Mar. 10, 2009)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employee sued defendant employer claiming he was improperly classified him as exempt from overtime pay requirements of 29 U.S.C.S. §§ 206, 207 of the Fair Labor Standards Act. The court conditionally certified a collective action under 29 U.S.C.S. § 216(b). The employee moved to compel the employer to produce the social security numbers of absent class members to facilitate notice. The employer objected.

**OVERVIEW:** The employee, and the other class members, worked as an assistant manager at the employer's pizza store and claimed that his primary responsibility was to make pizza and not to manage. To effectuate notice, the employer had been required to give the name, last known home address (including zip code), last known telephone number, and dates of employment

for the members of the conditionally certified class. The class included 1,841 individuals of which the employee had been completely unable to reach 161 (or all but around 9%) of the members. The employee sought the social security numbers to help in contacting the previously unreachable class members. The request did not relate to any claim or defense of the current parties. The costs associated with the compelled production of the social security numbers outweighed the benefits to be effectuated by the additional notice. The additional benefit of spreading the litigation costs to 14 to 15 more individuals (the court's estimate of the additional opt-in members that would be generated with the production of the social security numbers) was small, opt-in plaintiffs already shared litigation costs with at least 150 individuals.

**OUTCOME:** The employee's motion was denied.

**CORE TERMS:** security numbers, class members, notice, collective action, opt-in, judicial system, privacy interests, balancing test, unreachable, forwarding, compelled, single action, compel production, mailed notice, receive notice, plaintiff-employee's, confidentiality, conditionally, undeliverable, affirmatively, confidential, disclosure, putative, privacy, phone, opt, last known, unable to reach, outweigh, trace

2009 U.S. Dist. LEXIS 31887, *

LexisNexis(R) Headnotes

*Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions*
[HN1]Courts have not uniformly required the production of social security numbers for putative Fair Labor Standards Act collective action members.

*Civil Procedure > Discovery > Methods > Requests for Production & Inspection*
*Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions*
[HN2]The request for the social security numbers of absent class members in a Fair Labor Standards Act collective action is not a normal discovery request.

*Civil Procedure > Discovery > Disclosures > Motions to Compel*
*Civil Procedure > Discovery > Relevance*
[HN3]See Fed. R. Civ. P. 26(b).

*Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions*
[HN4]29 U.S.C.S. § 216(b) notes that no individual is a party to a collective action unless he or she affirmatively opts into the action.

*Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions*
[HN5]Providing sensitive personal data such as a social security number is not to be done lightly. Nor should people who appear to have no or little interest in joining the lawsuit be faced with the possibility of being contacted by telephone or having additional personal information released.

*Labor & Employment Law > Wage & Hour Laws > Remedies > Class Actions*
[HN6]A collective actions allows plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity. Notice serves these interests.

*Evidence > Inferences & Presumptions > Presumption of Regularity*
[HN7]At common law, there is a presumption that a properly addressed, stamped, and mailed letter is received by the addressee.

**COUNSEL:**  [*1] For Eusebius Jackson, on behalf of himself and all others similarly situated, Plaintiff: Ann-Marie Ahern, McCarthy, Lebit, Crystal & Liffman, Cleveland, OH; Anthony J. Lazzaro, Lazzaro Law Firm, Cleveland, OH; Jason R. Bristol, Joshua R. Cohen, Thomas A. Downie, Cohen, Rosenthal & Kramer, Cleveland, OH.

For Papa John's USA, Inc., Papa John's International, Inc., Defendants: Thomas H. Barnard, Jr., LEAD ATTORNEY, Daniel A. Messeloff, John Gerak, Sara E. Hutchins, Ogletree, Deakins, Nash, Smoak & Stewart - Cleveland, Cleveland, OH.

**JUDGES:**  JAMES S. GWIN, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** JAMES S. GWIN

**OPINION**

OPINION & ORDER

[Resolving Doc. No. 46-1; 52-1; 59-1]

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Jackson moves this Court to compel Defendants to produce the social security numbers of absent members of this conditionally-certified collective action to facilitate notice to previously unreachable individuals. [Docs. 46-1, 54-1.] Defendants object to the production of the social security numbers because of privacy concerns for those absent members. [Doc. 51-1 at 1.] In resolving this motion, this Court will balance the benefits of additional notice, *see Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 170-171, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989),  [*2] against the "highly personal and confidential nature of social security numbers and the harm that can flow from disclosure," *Gieseke v. First Horizon Home Loan Corp.,* No. 04-2511-CM-GLR, 2007 U.S. Dist. LEXIS 9217, 2007 WL 445202 (D. Kan. Feb. 7, 2007).

2009 U.S. Dist. LEXIS 31887, *2

In opposing Plaintiff's motion, Defendants have separately asked to supplement their response, [Doc. 52-1,] and to file a sur-reply instanter, [Doc. 59-1.] The Court **GRANTS** both motions. Because this Court holds that the privacy interests of the absent members outweigh the benefits of the notice, this Court **DENIES** Plaintiff's motion to compel production of the social security numbers.

## I. Background Facts and Procedure

On November 26, 2008, Plaintiff Jackson sued Defendants saying that Defendants improperly classified him as exempt from overtime pay requirements of the Fair Labor Standards Act ("FLSA") §§ 6 and 7, 29 U.S.C. §§ 206, 207. [Doc. 1-1.] Plaintiff Jackson worked as an Assistant Manager for Defendants and claims that his primary responsibility was to "make pizza" and not to manage. [Doc. 1-1 at 4.] Around one month after filing suit, Plaintiff Jackson moved this Court to conditionally certify a collective action under 29 U.S.C. § 216(b) consisting of other [*3] similarly-situated Assistant Managers working for Defendants. [Doc. 10-1.]

On February 13, 2009, this Court conditionally certified the Plaintiff's collective action and then approved notice to the putative class members. [Doc. 36.] To effectuate notice, this Court required Defendants to give Plaintiff the name, last known home address (including zip code), last known telephone number, and dates of employment for the members of the conditionally certified class. [Doc. 29 at 10.] This class included 1,841 individuals.

Plaintiff mailed notice of this collective action to all members. Of these 1,841 notices sent, Plaintiff has been completely unable to reach 161 (or all but around 9%) of the members. [Doc. 46-2, Ex. 1 at 1-2.] [1] Plaintiff says that the social security numbers will help to contact the previously unreachable class members because the numbers "will allow [him] to hire a firm to perform what is called an address trace." [2] [Doc. 46-1 at 2.] Plaintiff has offered to sign a confidentiality agreement to protect the social security numbers and has also offered to have Defendants send the social security numbers directly to a third-party firm for the address trace so that Plaintiff [*4] will not have any access to the numbers. [Doc. 52-1 at 2.]

1   Of the notices that Plaintiff sent, 206 were returned as undeliverable. Of those 206, 37 had forwarding information. Of the remaining 169

individuals that did not have forwarding information, the Plaintiff was able to reach 8 additional members by phone. This leaves 161 absent members that Plaintiff was unable to reach in the initial notice, that Plaintiff has no forwarding information for, and that Plaintiff has been unable to reach by phone. [Doc. 46-2, Ex. 1 at 1-2.]

2   Accordingly to Plaintiff, "[a]n address trace is performed using a Lexis-Nexis credit-header search, and requires both the last known address and the individual's social security number." [Doc. 46-1 at 2.]

## II. Legal Standard

Without providing any citations, Plaintiff says that "[s]tandard operating procedure calls for the use of [social security numbers] to locate prospective plaintiffs and inform them of their right to participate in this lawsuit." [Doc. 46-1 at 7.] [HN1]Courts, however, "have not uniformly required the production of social security numbers for putative FLSA collective action members." *Gieseke*, 2007 U.S. Dist. LEXIS 9217, 2007 WL 445202 at *4. The parties each point to district [*5] court cases that support their positions: one where the court compelled production of the social security numbers, *Gieseke*, 2007 U.S. Dist. LEXIS 9217, 2007 WL 445202 at *4, and one where the court did not, *Vennet v. American Intercontinental University Online*, No. 05 C 4889, 2006 U.S. Dist. LEXIS 22309, 2006 WL 9080303 (N.D. Ill. April 5, 2006).

The parties nonetheless both direct this Court to a balancing test provided in the *Gieseke* case:

> In general, courts apply a balancing test weighing the plaintiffs' need for social security numbers to facilitate notification of the FLSA action against the privacy interests of the putative class members. This balancing test considers the highly personal and confidential nature of social security numbers and the harm that can flow from disclosures, then balances it against the plaintiff's need for the information to notify prospective class members.

2007 U.S. Dist. LEXIS 9217, 2007 WL 445202 at *4 (the

Page 3

"*Gieseke* test"); [Doc. 51-1 at 4;] [Doc. 54-1 at 3.]

   The plaintiff-employee in *Gieseke* sought to compel the defendant-employer to produce social security numbers for those absent class members whose notices had been returned undeliverable. *Id.* The Court held that the plaintiff-employee had shown a need for the social security numbers [*6] because 13% (this percentage was "continu[ing] to increase") of the absent class members had not received the notice. *Id.* The court then reasoned that the privacy interests of absent class members would be "adequately addressed by requiring the production subject to parties' protective order limiting the disclosure and dissemination of confidential information." *Id.*

   Under this *Gieseke* test, a court would not require the production of social security numbers unless a plaintiff had shown that the absent individuals could be reached by using less private contact information. *Cf. Gilbert v. Citigroup, Inc.*, No. 08-0385 SC, 2009 U.S. Dist. LEXIS 18981, 2009 WL 424320, *6 (N.D. Cal. Feb. 18, 2009); *Lee v. ABC Carpet & Home*, No. 00 Civ. 0984 (DAB), 2008 U.S. Dist. LEXIS 38725, 2008 WL 2073932, *3 (S.D.N.Y. May 9, 2008) ("While [social security numbers] may make it easier for Plaintiff to contact potential class members, Plaintiff has not provided a convincing rational to explain why the production of such sensitive information is needed.").

   This balancing test suggests that, as long as a named plaintiff needs the social security numbers for notification (i.e., cannot reach absent class members through less private contact information), a court should [*7] compel production of social security numbers when the parties have a confidentiality agreement. *Id.* Essentially, need plus protective order equals production.

   By focusing on the named plaintiff's need, however, the *Gieseke* test overstates a plaintiff's entitlement to the social security numbers and fails to account for the interests served by a notice in an FLSA collective action. [HN2]The request for the social security numbers of absent class members is not a normal discovery request. FED. R. CIV. P. 26(b) ([HN3]"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's *claim or defense*.") (emphasis added). The request here seeks to compel Defendants to produce private information of members of the general public, even though that information does not relate to any claim or defense of the current parties. *See* [HN4]29 U.S.C. § 216(b) (noting that no individual is a party to a

collective action unless he or she affirmatively opts into the action); *see also Vennet*, 2006 U.S. Dist. LEXIS 22309, 2006 WL 908030 at *3 ([HN5]"[P]roviding sensitive personal data such as a social security number is not to be done lightly. Nor should people who appear to have no or little interest in joining the lawsuit [*8] be faced with the possibility of being contacted by telephone or having additional personal information released.").

   Instead of focusing on the Plaintiff's need for the social security numbers, this Court will balance the costs and benefits associated with compelled production. The Supreme Court has held that [HN6]"[a] collective actions allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Hoffmann-La Roche*, 493 U.S. at 170. Notice serves these interests. *See id.* at 170-171.

   In light of *Hoffman-La Roche*, and the privacy concerns identified above, this Court will examine several factors to decide whether to compel Defendants to produce the social security numbers: (1) the interest of opt-in members' in cost reductions to be achieved by additional notice; (2) the interest of the judicial system in dealing with the common questions of fact and law in a single action; (3) the interest of this Court and the current parties in avoiding undue delays; (4) the interest of previously unreachable [*9] class members in having the opportunity to participate in this litigation and reduce costs; and (5) the interests of previously unreachable class members in having their social security numbers kept private.

## III. Application

   Here, the Court holds that the costs associated with the compelled production of the social security numbers outweigh the benefits to be effectuated by the additional notice.

   First, based on the parties' submissions, the evidence suggests that Plaintiff Jackson has been successful in reaching 1,680 of the 1,841 absent class members. This represents 91% of the absent class members. [3] The interest of Plaintiff Jackson and other opt-in Plaintiffs in the pooling of resources accomplished by compelling production of social security numbers is minimal. Of the 1,680 absent class members that have received Plaintiff's

2009 U.S. Dist. LEXIS 31887, *9

mailed notice, around 150 have opted into this litigation. [Doc. 51-1 at 2.] This is an opt-in rate of around 9%. Assuming that this rate would continue for those individuals that have failed to receive any contact from Plaintiff (161 individuals), the production of the social security numbers would, assuming the social security numbers lead to an accurate address, [*10] yield an additional 14 or 15 opt-in Plaintiffs. Here, the additional benefit of spreading the litigation costs to 14 to 15 more individuals is small, opt-in Plaintiffs will already share litigation costs with at least 150 individuals. *See Gilbert v. Citigroup, Inc.,* No. 08-0385 SC, 2009 U.S. Dist. LEXIS 18981, 2009 WL 424320 (N.D.Cal.Feb. 18, 2009) (denying plaintiff-employee's request for social security numbers but noting that plaintiff "may move to compel production of social security numbers if this contact information is not sufficient to provide notice to a *large percentage* of potential class members") (emphasis added).

    3  Plaintiff Jackson also called the absent class members whose notice had not been returned as undeliverable but who had not yet opted into the collective action. [Doc. 54-1 at 2-3.] Plaintiff was unable to connect to 29% of these individuals that he called and suggests that this "raises a concern as to the effectiveness of the notice ordered by the Court in this case." [Doc. 54-1 at 3.] This Court finds this general challenge to the effectiveness of the mailed notice unpersuasive. *See Cook v. Providence Hosp.,* 820 F.2d 176, 179 n.3 (6th Cir. 1987) ([HN7]"At common law, there is a presumption that [*11] a properly addressed, stamped, and mailed letter is received by the addressee."). Plaintiffs sent the notices through first class mail. [Doc. 46-1 at 4.] This failure to reach some absent class members by phone does not mean that the Plaintiff's notice failed to reach those class members.

Second, this Court recognizes the interest of the judicial system in treating the common questions of fact and law in a single action. Because, however, certification is only conditional at this stage, there is no guarantee that this Court will adjudicate these issues in a single action even if it orders additional notice. Also, absent class members are not party to this suit and can choose to pursue their claims individually even if they do receive notice. So while treatment of this controversy in a single action will benefit the judicial system, additional notice will not necessarily guarantee that the judicial system will receive this benefit.

Third, this Court, and the parties currently before this Court, have an interest in efficient resolution of this controversy. A further extension of the notice period may cause delays that undercut the efficiencies that can be achieved through additional notice.

Fourth, [*12] absent class members have an interest in taking advantage of the cost saving aspects of a collective action. These absent class members, however, have failed to provide accurate mail forwarding information and have therefore not protected this interest. Additionally, the failure to receive notice does not prejudice absent class members to the same extent as in a Rule 23(b)(3) class. In a Rule 23(b)(3) class, a judgment binds absent class members unless they affirmatively opt out, which they cannot do unless they receive notice. Here, absent class members will not be a party to this litigation unless they affirmatively opt in. Absent class members can still pursue their claims individually outside this collective action.

Fifth, absent class members additionally have a strong interest in the privacy of their social security numbers. Assuming that the opt-in rate continues, around 147 individuals that have no interest in this litigation will have their social security numbers turned over to Plaintiff or to a third party. Despite the protections that a confidentiality order can provide, this is an intrusion on important privacy interests of individuals that are, at this point, just members [*13] of the public and not connected to this action. *See* 29 U.S.C. § 216(b); *Hoffmann-La Roche,* 493 U.S. at 177-78 (Scalia, J., dissenting).

After weighing these various interests, this Court holds that the costs associated with compelled production of absent class members' social security numbers outweigh the benefits.

## IV. Conclusion

For the reasons stated above, this Court **DENIES** the Plaintiff's motion.

IT IS SO ORDERED.

Dated: April 15, 2009

/s/ *James S. Gwin*

2009 U.S. Dist. LEXIS 31887, *13

JAMES S. GWIN                                UNITED STATES DISTRICT JUDGE

LEXSEE



Analysis
As of: Dec 10, 2010

**DIANE ADOMA, Plaintiff, v. THE UNIVERSITY OF PHOENIX, INC., et al., Defendants.**

**NO. CIV. S-10-0059 LKK/GGH**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA**

**2010 U.S. Dist. LEXIS 114503**

**October 14, 2010, Decided
October 15, 2010, Filed**

**PRIOR HISTORY:** Adoma v. Univ. of Phoenix, Inc., 2010 U.S. Dist. LEXIS 96388 (E.D. Cal., Aug. 31, 2010)

**CORE TERMS:** notice, class members, mailing, class certification, proposed class, administrator, class actions, enrollment, overtime, permission, website, counselor, certification, additionally, mail, stay proceedings, misleading, deadlines, fee arrangements, hypothetical, scheduled, modified, clarity, state law claims, questions of law, advisory committee's, dissemination, supplemental, premature, preparing

**COUNSEL:** [*1] For Diane Adoma, Plaintiff: Megan Ross Hutchins, Michael Lion Tracy, LEAD ATTORNEYS, Law Office of Michael Tracy, Irvine, CA.

For University of Phoenix Inc, Apollo Group Inc, Defendants: Jason S. Mills, LEAD ATTORNEY, John Spivey Battenfeld, Morgan, Lewis and Bockius LLP, Los Angeles, CA.

**JUDGES:** LAWRENCE K. KARLTON, UNITED STATES DISTRICT COURT SENIOR JUDGE.

**OPINION BY:** LAWRENCE K. KARLTON

**OPINION**

ORDER

This is a class-action wage and hour case filed by Enrollment Counselors against their employer, defendant University of Phoenix, Inc., a wholly owned subsidiary of defendant Apollo Group, Inc. This court granted class certification on August 31, 2010. ECF No. 83. Defendants have filed a petition for permission to appeal the class certification with the Ninth Circuit, and filed a motion to stay with this court on September 28, 2010. That motion is scheduled for hearing on November 8, 2010. ECF No. 97. Plaintiffs now move for approval of Class Notice. For the reasons stated below, plaintiffs' motion, ECF No. 90, is granted in part and denied in part.

**I. Background**

In January 2010, plaintiff Diane Adoma filed a complaint on behalf of herself and similarly-situated enrollment counselors working for The University of Phoenix. [*2] The University of Phoenix is a private, for-profit educational institution and wholly owned subsidiary of Apollo Group, Inc. The complaint alleged violations of state and federal labor laws, including that the defendant failed to pay employees proper overtime compensation, failed to allow employees to take breaks,

2010 U.S. Dist. LEXIS 114503, *2

paid employees with out-of-state checks, failed to furnish employees with itemized wage statements, and retaliated against plaintiff for complaining of these alleged violations. Plaintiff's original claims were made under both the California Labor Code and the federal Fair Labor Standards Act ("FLSA").

On August 13, 2010, this court declined to exercise jurisdiction over plaintiff's FLSA claims under the first-to-file rule, and transferred the FLSA claims to the Eastern District of Pennsylvania where a complaint involving the same plaintiffs and issues had already been filed (Sabol v. The University of Phoenix, No. CV 09-03439-JCJ (E.D. Pa.)), and where a nationwide collective action was certified. Order, August 13, 2010, ECF No. 70. After supplemental briefing from the parties on the issue of the court's jurisdiction over the state law claims, this court concluded that the [*3] amount in controversy exceeded the jurisdictional amount required under the Class Action Fairness Act, 28 U.S.C. § 1332(d), and that the named plaintiffs are citizens of California whereas the defendants are citizens of Arizona. The court concluded, therefore that jurisdiction over the class claims under state law was proper under 28 § 1332(d), and that supplemental jurisdiction over individual claims was proper under 28 U.S.C. § 1367. Order, August 31, 2010, ECF No. 83.

Plaintiffs' state-law claims are that they worked unpaid "off-the-clock" overtime, that the defendant paid the wrong hourly rate for overtime, that defendants caused employees to miss meal periods, that defendants provided inaccurate pay stubs, and that plaintiffs are entitled to waiting-time penalties.

In the August 31, 2010 order, this court granted class certification under Fed. R. Civ. P. 23(b)(3), holding that questions of law or fact common to the class predominated over questions affecting individual members, and further that class was the superior method for treatment of plaintiffs' state law claims. Defendants filed a Petition for Permission to Appeal class certification with the Ninth Circuit on September 14, [*4] 2010. Also on September 14, 2010, plaintiffs filed a motion for approval of Class Notice, ECF No. 90, which is the subject of the instant order.

Defendants have also filed a motion to stay proceedings in this court until the Ninth Circuit's disposition of the Petition for Permission to Appeal, or alternatively, throughout the entire appeal process. Def.'s

Mot. for a Stay, September 28, 2010, ECF No. 97. Hearing on defendant's motion to stay is scheduled for November 8, 2010.

## II. Analysis

Plaintiffs assert that their proposed class notice should be approved because it meets the Fed. R. Civ. P. 23(c)(2)(B) requirements that apply to class actions certified under Rule 23(b)(3). Defendants argue primarily that approval of class notice would be premature, given defendant's pending motion for a stay of proceedings and petition for permission to appeal to the Ninth Circuit. Additionally, defendants argue that the proposed notice is defective because it doesn't comply with Fed. R. Civ. P. 23(c)(2)(B).

## A. Adequacy of Plaintiff's Proposed Class Notice under Rule 23(c)(2)(B).

Fed. R. Civ. P. 23(c)(2)(B) governs class notice for classes certified under Rule 23(b)(3), and is applicable here.

> For any [*5] class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances. . . The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). In order to help courts comply with the requirements of Rule 23(c)(2)(B), the Rules Advisory Committee notes that the "Federal Judicial Center has created illustrative clear-notice forms that provide a helpful starting point for actions similar to those described in the forms." Fed. R. Civ. P. 23(c) advisory committee's note. A proposed class notice may be rejected as far "too lengthy and detailed." In re Cypress Semiconductor Securities Litigation, 1995 WL

2010 U.S. Dist. LEXIS 114503, *5

241434 (N.D. Cal. 1995). In addition to the Rule 23(c) requirements, [*6] class notice must be neutral and must avoid endorsing the merits of the claim. See, e.g. Hoffman La-Roche v. Sperling, 493 U.S. 165, 173, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989) ("In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality.").

Plaintiff's proposed class notice is a seventeen-page document adapted from the "Employment discrimination class action certification" example provided on the Federal Judicial Center's website. The proposed notice contains all of the required elements of Rule 23(c)(2)(B). Defendants argue that plaintiffs' proposed notice is not clear or concise, and that it is not neutral. Defendants do not point to particular components of plaintiffs' proposed notice that are unclear, but do give specific examples of language that they believe to be misleading, adversarial and argumentative. This court agrees that some changes to plaintiff's proposed class notice are necessary to meet the clear, concise, and neutral standards required by law. The court's approved class notice is attached to this order.

**i. The description of plaintiffs' planned method of proof of overtime claims is not warranted in the class notice.**

Defendants [*7] argue that including passages describing how plaintiffs will prove their claim is prejudicial. See Plaintiffs' Proposed Notice at 6-7. Although the existence of common methods of proof of plaintiffs claims is relevant to the court's finding that class certification was proper, the court finds that inclusion of the description of plaintiffs' anticipated proof may be confusing or misleading, and is unnecessary for the purpose of class notice.

**ii. Plaintiffs' description of defendants' defenses requires clarification.**

Defendants argue that unequal treatment is given to defenses and that the defenses are misrepresented. Defendant does not propose any alternative language that is more thorough and accurate. In the interest of clarity, Section 7 of plaintiffs' proposed notice, describing defendants' answer, shall be modified to read as follows: "The University of Phoenix denies any wrongdoing and says that all wages were properly paid in compliance with the law."

**iii. Plaintiffs' description of the court's findings with respect to class certification require modification.**

Defendants argue that Section 5 of the plaintiffs' proposed class notice misrepresents the court's findings with respect [*8] to class certification. Because the court based certification of common *questions* of law and fact, the word "facts" shall be changed to "factual issues" throughout Section 5.

**iv. Plaintiffs' hypothetical overtime wage calculation is does not add clarity to the proposed notice.**

In Section 6 of plaintiffs' proposed class notice, plaintiffs have included a hypothetical example to illustrate the effect of defendants' exclusion of tuition benefits in overtime calculations. The court finds that the hypothetical does not add clarity to the notice, and that it shall be removed from the notice.

**v. Plaintiffs have included in their notice an additional class that the court did not certify.**

The class labeled "c." in Section 11 of plaintiffs' proposed notice is not a class that was certified by the court. The description of that class is therefore to be removed from the class notice.

**vi. Inclusion of a website in the class notice is approved by the Federal Judicial Council, and is proper.**

Plaintiffs have included in their proposed order a referral to a website where class members can obtain additional information. A referral to a website is included in the Federal Judicial Council's model class notice, [*9] and is not improper.

**vii. The proposed notice shall notify class members that if they request exclusion from the class action, they "may" have to pay their own lawyer should they wish to pursue an action against defendant.**

Section 17 of plaintiffs' proposed notice states that class members who start their own lawsuit against defendants after excluding themselves from the class action will have to hire and pay for their own lawyer. Defendants argue that this language is misleading and coercive because it does not notify class members that they may find a lawyer who will work on a contingent basis. The court agrees with the plaintiffs that contingent fee arrangements may involve payment to the lawyer.

Page 3

2010 U.S. Dist. LEXIS 114503, *9

However, the nature of contingency fee arrangements is that the attorneys also may not end up collecting a fee. Section 17 shall be modified accordingly.

Additionally, Section 20 states that class members will have to pay for a lawyer if they want their own lawyer to participate in the class action. Because of the possibility of contingency fee arrangements, Section 20 shall be modified to indicate that class members "may" have to pay for their own lawyers.

### B. Defendants' Motion to Stay

Defendants [*10] have filed a petition with the Ninth Circuit, seeking permission to appeal class certification. Such an appeal does not automatically stay proceedings in this court. Fed. R. Civ. P. 23(f). Additionally, "ordinarily, notice to class members should be given promptly after the certification order is issued." Manual for Complex Litigation (Fourth) § 21.311.

The defendants have filed a motion to stay proceedings in this court pending their appeal with the Ninth Circuit. That motion is not before the court today, but is scheduled to be heard on November 8, 2010. Defendants argue that approval of class notice would be premature, given the pending motion for a stay, and that this court should deny plaintiffs' motion for approval of class notice on that basis. Defs' Opp'n to Mot. 2-4, ECF No. 98. Defendants argue that it is in the interest of judicial economy to defer the decision on class notice until resolution of the appeal of certification, citing the cost of class notice, and the potentially prejudicial effect of notifying the class before the Ninth Circuit has ruled on class certification.

The court does not agree that such a delay in class notice is in the interest of judicial economy. [*11] The defendants have not demonstrated that they will suffer any irreparable harm if class notice is disseminated. The court today is not ruling on defendant's motion to stay. Rather, the court is deciding whether or not the proposed class notice complies with Rule 23. Defendants have not disputed the plaintiffs' proposed method or deadlines for dissemination of class notice, and the court finds the proposed method and deadlines to be reasonable. Therefore, the court ORDERS parties to proceed with preparing and disseminating class notice, using the approved class notice attached to this order. The court additionally GRANTS approval of plaintiffs' proposed deadlines, and method for dissemination.

### III. Conclusion

For the foregoing reasons, the court ORDERS as follows:

[1] Plaintiffs' Motion for Approval of Class Notice, ECF No. 90, is GRANTED in part and DENIED in part.

[2] Parties are ORDERED to proceed with preparing the approved class Notice and Request for Exclusion attached to this order for publication and mailing.

[3] CPT Group, Inc. Is designated as the Claims Administrator.

[4] Within seven (7) days from the entry of this Order, the Defendants will provide to the claims administrator [*12] the names and last known addresses for all Enrollment Counselors who worked at least one week in the State of California for either The University of Phoenix, Inc. Or Apollo Group, Inc. at any time between April 5, 2005 and August 13, 2010. The term "Enrollment Counselors" includes employees with the job title of "enrollment counselor" as well as any other nonexempt employee who utilized the Avaya phone system's Automatic Call Distribution system to receive calls relating to enrollment.

[5] Within fourteen (14) days from the entry of this Order, the Claims Administrator shall mail by first class mail a copy of the Notice and Request for Exclusion to each class member. The dates on which this mailing is performed will be the Date of First Mailing.

[6] The Claims Administrator will collect all mail which is returned as undeliverable within thirty (30) days of the Date of First Mailing and shall use a standard method to determine whether a current address for the Class Member is available. For those Class Members for which a different address is obtained by the Class Administrator, a second copy of the Notice and Request for Exclusion shall

2010 U.S. Dist. LEXIS 114503, *12

be mailed by first class mail. This mailing shall [*13] be done after thirty (30) days from the Date of First Mailing, but prior to or on thirty-seven (37) days from the Date of First Mailing. The date of this mailing shall be the Date of Second Mailing.

[7] Any Class Member who submits a request for Exclusion that is postmarked or actually received forty-five (45) days from the Date of First Mailing shall be excluded from the Class. All other Class Members, except those who receive a Second Mailing, will then be part of the Class.

[8] Any Class Member who is sent the Second Mailing and who submits a Request for Exclusion that is postmarked or actually received forty-five (45 days from the Date of Second Mailing shall be excluded from the Class. Any Class Member who fails to return the Request for Exclusion within the required time period will be part of the Class.

[9] Within fourteen (14) days from the last date on which any Class Member can submit a Request for Exclusion, the Class Counsel shall cause a Report to be filed with this Court that: (1) indicates that the Claims Administrator complied with this order, (2) provides a list of individuals who are Class Members, and (3) provides a list of individuals who opted out of the Class.

[10] [*14] At the conclusion of the opt-out period, the Claims Administrator shall provide the contact information for all Class Members who did not opt out to Class Counsel.

[11] Class Counsel may, at his own expense, maintain a website to provide case documents and contact information to Class Members.

IT IS SO ORDERED.

DATED: October 14, 2010.

/s/ Lawrence K Karlton

LAWRENCE K. KARLTON

SENIOR JUDGE

UNITED STATES DISTRICT COURT